Case 4:96-cv-01251-SHL   Document 21   Filed 07/02/97   Page 1 of 11

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| JUANZA SMITH, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CV 96-L-1251-M |
| JRH RISK SERVICES, INC.; HOMES OF LEGEND, | ) ) | |
| Defendants. | ) | |

ENTERED
JUL 2 1997

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This cause came on for trial before this court, without the intervention of a jury, on June 11, 1997 upon the pleadings, the order of pretrial conference, the evidence and exhibits, and the arguments of counsel. The court enters the following findings of fact and conclusions of law:

### Findings of Fact

1.  Plaintiff Juanza Smith is married to Charles E. Smith, who is employed by Homes of Legend, Inc. ("Homes of Legend").

2.  Homes of Legend maintains an employee benefit plan for its employees and other dependents.

3.  The Homes of Legend plan provides that all active employees are eligible to participate in the plan and provides that

1



a covered employee's spouse is eligible to participate in the plan.

       4.    Plaintiff's coverage under the Homes of Legend plan became effective on July 1, 1994.

       5.    Claims made under the Homes of Legend plan are processed by JRH Risk Services, Inc. ("JRH"). JRH acts as the agent of the plan when it determines whether claims are to be paid. JRH pays claims, and Homes of Legend then reimburses JRH. Homes of Legend has obtained aggregate and specific reinsurance to limit its liability during each calendar year.

       6.    The plan provides that Homes of Legend is the plan administrator, although Homes of Legend may appoint an individual to serve as plan administrator. The plan gives the plan administrator the "maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a Plan Participant's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan."

       7.    The plan defines a pre-existing condition as "a diagnosed or undiagnosed, symptomatic or asymptomatic, Injury or Sickness that was treated within 90 days of the person's coverage taking effect under this Plan. Treatment includes receiving medical care, services and supplies, including consultations, diagnostic tests or prescribed medicines." The plan does not cover charges for pre-existing conditions unless the person has been free from treatment for at least three consecutive months from the

effective date of her coverage, or unless the person has been covered under the plan for twelve consecutive months.

8. Plaintiff was treated for chronic obstructive pulmonary disease ("COPD") within ninety days of her coverage taking effect under this plan. Her treatments for COPD continued after the effective date of her coverage and did not abate for any three consecutive months.

9. COPD is commonly referred to as emphysema. It is a disease of the lungs in which the airways are narrowed and obstructed.

10. Plaintiff's medical condition was stable up to Christmas of 1994. She prepared the family meal on that day as she always had. After Christmas, her health started rapidly declining. On January 7, 1995, plaintiff was admitted to the Boaz-Albertville Medical Center with three days' of worsening shortness of breath and dyspnea with exertion. She was initially treated by her physician, Dr. Raymond Ufford, for worsening COPD. When she did not respond to the treatments, Dr. Ufford consulted with Dr. L. K. Peredo, a pulmonologist. A perfusion lung scan was ordered on January 13, 1995. The test revealed defects in the left middle and right lower lungs. As a result of the scan, the doctors began treatment with the blood thinner Heparin to guard against possible emboli, that is, blood clots in the lungs. Plaintiff responded to the treatment. On January 19, 1995, another perfusion lung scan was performed, and the doctors found that the perfusion defect in the right lower lung had cleared and that the defect in the left

3

lower lung was smaller. Plaintiff was released from the hospital January 29, 1995. Dr. Ufford's discharge summary diagnosed plaintiff as having suffered from both pulmonary emboli and severe COPD. Plaintiff began taking Coumadin, an oral blood thinning medicine, to prevent further pulmonary emboli. On February 25, 1995, plaintiff was admitted to the same hospital with problems relating to the dosage of Coumadin which she was taking. She was discharged March 1, 1995. Plaintiff incurred medical bills totaling $53,436.30.

      11. When JRH became aware of plaintiff's claim for the hospitalizations, Teresa Dougherty, a claims supervisor at JRH, set out to determine whether the claim was excluded by any preexisting condition. After obtaining medical records from the doctor, hospital, and pharmacy, Dougherty contacted Dr. Robert Smith to conduct an independent medical review of the records. For the past seven years, Dr. Smith has conducted these types of reviews for health insurance companies in return for remuneration. During a telephone conversation with Dr. Smith, Dougherty read some of the medical records to him, but she does not recall what records she read. On August 7, 1995, Dougherty sent email to the vice president of JRH, Venny Cable, in which she stated that Dr. Smith felt there was strong medical evidence to deny plaintiff's claim. Cable replied by email to Dougherty on the same day that the claim would be denied. On August 9, 1995, fourteen pages of medical records, as well as the plan's provisions concerning preexisting conditions, were sent by facsimile to Dr. Smith. After reviewing

the medical records, Dr. Smith on August 11, 1995 determined that plaintiff's initial hospitalization was for the preexisting condition of COPD, and that the second hospitalization was for a complication from pulmonary emboli. Dr. Smith stated that coverage for the second hospitalization would depend on how the term "preexisting condition" was construed.

    12. On August 10, 1995--one day before receiving Dr. Smith's findings--Cable sent a letter to plaintiff's attorney denying plaintiff's claims on the ground that they were related to a preexisting condition. The denial letter stated, "We would, however, be willing to re-examine our files should we receive medical records from Kirkland Clinic...."

    13. The fourteen pages of medical records sent to Dr. Smith did not include either the second perfusion lung scan which was conducted on January 19, 1995 or a page of medical records from Boaz-Albertville Medical Center which stated that plaintiff was admitted with three days' shortness of breath. Although both of these documents were contained in the claims file maintained by JRH, neither document was ever forwarded to Dr. Smith. Medical records obtained from Kirkland Clinic were never forwarded to Dr. Smith. Neither Dougherty nor Cable has medical training. Thus no one with medical training ever examined these records as part of a review of plaintiff's claims.

    14. On January 17, 1996, plaintiff's attorney forwarded to JRH two letters from Dr. Ufford and requested that these letters be considered by JRH. The first letter stated that the pulmonary

5

embolus was "the major acute illness that caused her [plaintiff's] hospitalization and was not a pre-existing condition." The second letter stated that the pulmonary embolus "was a spontaneous onsetting disorder which was not related to any prior existing condition nor any prior existing medication." Dr. Smith has no record of ever reviewing these letters.

15. Ben Fryer, the controller of Homes of Legend serves as the plan administrator of the Homes of Legend Plan. He testified that, when JRH makes a recommendation that a claim should be denied, he "of course" follows the recommendation. Plaintiff's attorney requested that Homes of Legend review the claim on February 10, 1997. The plan states that any request for review must be directed to the plan administrator or claims processor within sixty days of the claim payment date or the date of the notification of denial of benefits. Fryer denied the claim because the request for a review was not timely and also because the claims related to a preexisting condition.

16. According to Dr. Smith, pulmonary emboli are blood clots in the lungs, and they are most commonly caused by debilitation and immobilization. Common risk factors include post-operative states, congestive heart failure, malignancies, thrombophlebitis, pregnancy, and massive obesity. The only risk factor for a pulmonary embolism which Dr. Smith found was immobilization and debilitation. Dr. Smith stated that both pulmonary emboli and COPD share the symptom of shortness of breath. Based upon his review of fourteen pages of medical records, it is

Dr. Smith's belief that plaintiff arrived at the hospital suffering from exacerbation of her COPD, that she became immobilized in the hospital, and that the immobilization led to the formation of the pulmonary emboli.

17. According to Dr. Ufford, COPD is not a risk factor for a pulmonary embolism. Further, Dr. Ufford found clear signs that plaintiff was hospitalized because of pulmonary emboli rather than COPD. Plaintiff's condition did not improve during the first days of her hospitalization (while she was being treated for COPD) but did begin improving once she was treated for pulmonary emboli. Also, the marked improvement in the perfusion scans coincided with the Heparin treatments given to plaintiff. Finally, plaintiff's shortness of breath occurred over a three-day period and is thus consistent with a pulmonary embolism, a disease of sudden onset.

18. According to Dr. William Saliski, an expert witness in the area of pulmonary and critical care medicine, the existence of COPD in a patient does not put her at any higher risk for a pulmonary embolism. Indeed, patients with COPD do not all take blood thinners.

## Conclusions of Law

1. This court has jurisdiction of this action and of the parties thereto.

2. The Homes of Legend employee benefit plan is an employee welfare benefit plan maintained by Homes of Legend for the

purpose of providing participants with coverage for catastrophic health expenses. 29 U.S.C. § 1002(1). This employee welfare benefit plan is also an employee benefit plan, 29 U.S.C. § 1002(3), and as such it is subject to the provisions found in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. 29 U.S.C. § 1003(a).

  3. As the spouse of a covered employee of Homes of Legend, Inc., plaintiff is a participant in the Homes of Legend plan.

  4. COPD was a preexisting condition for plaintiff, and treatment for it is not paid for by the plan.

  5. JRH served as the claims processor for the Homes of Legend plan. JRH did not serve as the plan administrator. The plan gives the plan administrator discretion sufficient to invoke the arbitrary and capricious standard of review. Firestone Tire and Rubber Company v. Bruch, 489 U.S. 101, 115 (1989). However, the plan does not give such discretion to the claims processor. Thus this claim is subject to de novo review. Id.; Buckley v. Metropolitan Life, No. 96-6125, 1997 WL 307004, at *4 (11th Cir. June 24, 1997)(stating that the three Firestone standards of review apply to factual findings as well as plan interpretations).

  6. In reviewing this claim de novo, the court treats plaintiff's claim like a claim for breach of contract. Firestone, 489 U.S. at 112. The court looks to the intent of the parties, and where a disputed term is unambiguous its natural meaning is conclusive of intent. Bedinghaus v. Modern Graphic Arts, 15 F.3d

8

1027, 1029 (11th Cir.), cert. denied, 115 S. Ct. 426 (1994). The evidence indicates that plaintiff was hospitalized because of pulmonary emboli. There is no evidence that the pulmonary emboli were a preexisting condition. Second, there is no compelling evidence that COPD results in pulmonary emboli or in any way caused the pulmonary emboli from which plaintiff suffered. Although Dr. Smith's opinion is that immobilization from the COPD resulted in the pulmonary emboli, Dr. Smith has not reviewed all of the medical evidence in this case, and thus his opinion is not persuasive. Finally, the plan does not include in its definition of preexisting conditions injuries which indirectly result from a preexisting condition but are separate from the preexisting condition. Although the plan's definition of preexisting conditions is disputed, the term lacks ambiguity and cannot be extended to include new illnesses which indirectly result from the preexisting condition.

7. Even if the plan at issue sub judice gave discretion to JRH, the arbitrary and capricious standard of review would nevertheless require that plaintiff's claim be paid. JRH acted arbitrarily by failing to forward to Dr. Smith the second perfusion lung scan, the page of medical records from Boaz-Albertville Medical Center which stated that plaintiff was admitted with three days' shortness of breath, the medical records obtained from Kirkland Clinic, and the two letters from Dr. Ufford. JRH has chosen to have an independent medical review based only on a portion of the records which it had at its disposal. JRH has acted

in an arbitrary and capricious manner.

8. Although plaintiff did attempt to exhaust the administrative review procedures provided in the Homes of Legend plan, it was futile for plaintiff to have done so. See <u>Curry v. Contract Fabricators Inc. Profit Sharing Plan</u>, 891 F.2d 842, 846-47 (11th Cir. 1990). The plan administrator would not have reversed the JRH denial. First, the plan administrator has a conflict of interest since he is employed by the company which is responsible for paying claims. Further, the plan administrator is a financial officer without the medical training necessary to determine whether the pulmonary emboli were preexisting. Finally, the plan administrator testified that he follows the recommendations of JRH. The evidence shows that the plan administrator would never pay a claim which JRH had previously denied, and it is futile for plaintiff to have attempted to exhaust administrative remedies.

9. This court does not reach the issue of whether JRH is a fiduciary. Plaintiff's complaint only states a claim against JRH for benefits due under the terms of the plan. A judgment for benefits cannot be recovered from JRH even if JRH were a fiduciary. 29 U.S.C. § 1132(d)(2).

10. The Homes of Legend plan should have paid the $53,436.30 of medical bills which are the subject of the case <u>sub judice</u>. A formal judgment in favor of plaintiff and against defendant Homes of Legend in the amount of $53,436.30 will be entered separately.

10

DONE this 1st day of July 1997.

_____
Seybourn H. Lynne
SENIOR JUDGE